[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff filed a motion for modification of custody of the minor child, Edward Joseph Urbansky, age 9, who presently resides with the defendant mother. The parties were married on October 3, 1980 and divorce was entered on May 27, 1987. At the time of the dissolution the parents were given joint custody with primary residence with the defendant mother.
TESTIMONY OF FAMILY RELATIONS OFFICER
At the hearing, Andrea Brown, Family Relations counselor, testified. Her excellent and comprehensive report was introduced into evidence. After reading the report the court makes the following findings:
1. Mr. Urbansky as the marriage began to deteriorate sought help with Dr. Anthony Mustello, a clinical psychologist.
2. As early as 1985 the plaintiff "expressed considerable concern for the effects of the marital discord upon his child."
3. Tricia Coile, the defendant's counselor, reports that she "appears to be very interested in the well being of her son and that he seems to be her first priority." Ms. Coyle recognized the ongoing animosity between the parents, noting that the defendant is reluctant to become involved in treatment with her husband.
4. That the child's pediatrician, Dr. Vactek, stated "his main problems are related to the turmoil that constantly exists between his parents which he is exposed to."
5. Dr. Michale Coyle, a psychologist, found: "E.J. is a 7 year old presenting High Average intellectual capabilities, offset by distinct difficulties in mathematic concepts and operations as well as being prone to distractibility factors in his environment. On an emotional level, E.J. is an insecure and depressed child who is driven beyond normative standards regarding concerns about his parents' divorce and current animosity toward each other". E.J. is apt to lash out at peers and engage in behaviors designed primarily to elicit adult attention. E.J. is "a tremendously engaging child who is truly enjoyable to be with, while these interpersonal assets are mostly manifested in his relationship with adults, if assisted he should be able to translate these to his peer relationships and enjoy great success." That "absent in E.J.'s profile is a carefree secure, child-like stage where there are a lack of concerns regarding his caretakers capabilities and CT Page 8875 relationships. Without feeling secure within his caretaking environment, E.J. is unable to move on to his peers. He is a child much to much involved in adult concerns and activities."
6. Dr. Coyle went on to say:
"the lack of communication and continued animosity between E.J.'s parents is seen as a significant factor in his profile. Some effort should be made to alleviate this stress so that mother and father can minimally communicate around E.J.'s immediate needs and avoid using him as a communication vehicle. While some type of discussion within a therapuetic [sic] context would be ideal, minimally, E.J.'s parents should consult frequently with his individual therapist."
7. The defendant mother "does appear to have great difficulty in communicating and cooperating in matters regarding the child."
8. Ms. Brown personally observed the defendant's inability to communicate or be in close proximity to the plaintiff.
9. Ms. Brown found that the defendant "has not yet cooperated in her son's treatment program which is essential to his healthy development and presently "EJ" is described as being stalled academically as well as socially."
10. Ms. Brown recommended that the primary residence of the child be changed to that of the plaintiff father.
TESTIMONY OF DR. PETER HUNT
Dr. Hunt, a psychologist from Newington Childrens Hospital, treats the child on an ongoing basis. His testimony was candid, and showed a genuine personal warmth for the boy and his mental well-being. He was objective and surely wanted only what was in the best interest of the child. His present medical diagnosis was that the boy suffered from an adjustment disorder, with mixed emotional features. He felt that "EJ" while being loyal to his mother feels a need to protect her, so much so, that his relationship with her is "conflicted." As a "conflicted" child he is preoccupied with his present arrangement, so preoccupied that his optimal development level as a child will not be reached. Further, if the present status continues he could become compulsive in his care-taking role [of his mother] that he could exclude his own self-needs as a person. Dr. Hunt indicated that the boy senses his role as a "go between" a mother who refuses to talk to his father. He CT Page 8876 found that the mom's intransigence of not talking or cooperating with his father has become such a preoccupation with the boy that he excludes his normal developmental self.
In reviewing the testimony of the mother this court finds it consistent with the statements of the experts. Basically each of the professionals stated that the lack of cooperation and communication of the mother with the father is hurting the child. To the mother's credit she brought the boy to a psychologist when he was having problems, however, when told that she is the chief source of the boy's conflict she basically ignores that advice and continues in her revenge role with her husband to the boys detriment. When asked on cross-examination if she was aware that her attitude towards her husband was hurting the boy she said yes, when asked if she would continue in the same mode even though it was hurting the boy she said yes.
Although the testimony indicates that the boy is physically healthy if he continues in the same household with his mother being the primary caretaker this child will suffer needlessly. It is the finding of this court that the mother's hatred of her ex-husband is so extreme that it is blinding her to the fact that she is hurting the boy who she truly loves. For the foregoing reasons this court finds that the best interest of the boy EJ is that he reside with the plaintiff father. The present visitation schedule will be reversed with the defendant mother assuming the same visitation that the father had. This may be modified by agreement of the parties.
NORKO, J.